SEP 18 2026 AM11:51
FILED - USDC - FLMD - TPA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DANIEL BENJAMIN FLEISCHMAN,**

Plaintiff,

v.

**THE SCHOOLS OF McKEEL ACADEMY, INC.,**

Defendant.
_______________________________________/

Case No. 8:26-cv-02483-MSS-NHA

Hon. Mary S. Scriven
United States District Judge

Hon. Natalie Hirt Adams
United States Magistrate Judge

# FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOMINAL AND COMPENSATORY DAMAGES

**(42 U.S.C. § 1983 — First and Fourteenth Amendments)**
Filed as of course under Fed. R. Civ. P. 15(a)(1)(A)
**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

References are to numbered paragraphs of this pleading.


**I. PRELIMINARY STATEMENT** ..... ¶¶ 1

**I-A. WHAT THIS PLEADING DOES NOT CLAIM** ..... ¶¶ 9

**I-B. ARTICLE III STANDING** ..... ¶¶ 14

**II. JURISDICTION AND VENUE** ..... ¶¶ 18

**III. PARTIES** ..... ¶¶ 25

**IV. STATE ACTION: McKEEL ACTS UNDER COLOR OF STATE LAW** ..... ¶¶ 30

A. Florida law declares McKeel's schools to be public schools ..... ¶ 31

B. McKeel wields a coercive power the State grants only to schools ..... ¶ 38

C. This Court has already identified McKeel as the operative actor ..... ¶ 41

**V. FINAL POLICYMAKING AUTHORITY** ..... ¶¶ 46

**VI. FACTUAL ALLEGATIONS** ..... ¶¶ 61

A. Plaintiff's son is enrolled; Plaintiff gives written notice of parental disagreement ..... ¶ 61

B. What Plaintiff was petitioning about ..... ¶ 65

C. Plaintiff's August 11–14, 2026 communications ..... ¶ 72

D. Hours later, McKeel issues the August 14, 2026 Directive ..... ¶ 77

E. Plaintiff sues, and complains to three government agencies ..... ¶ 84

F. The charter sponsor disclaims all involvement ..... ¶ 90

G. The September 15, 2026 Revised Directive — McKeel states its reasons ..... ¶ 91

H. Plaintiff asks McKeel to identify its written authority. McKeel does not answer ..... ¶ 98

I. The chill is actual, and it is measurable ..... ¶ 101

**VII. RELATIONSHIP TO THE PRIOR ACTION** ..... ¶¶ 106

**COUNT I — FIRST AMENDMENT RETALIATION — 42 U.S.C. § 1983** ..... ¶¶ 112

**COUNT II — FIRST AMENDMENT RETALIATION — 42 U.S.C. § 1983** ..... ¶¶ 122

**COUNT III — FIRST AMENDMENT — CONTENT- AND VIEWPOINT-BASED RESTRICTION AND UNCONSTITUTIONAL PRIOR RESTRAINT, AS APPLIED — 42 U.S.C. § 1983** ..... ¶¶ 131

**COUNT IV — FIRST AMENDMENT — PETITION CLAUSE — 42 U.S.C. § 1983** ¶¶ 142

**COUNT V — FOURTEENTH AMENDMENT — PROCEDURAL DUE PROCESS — 42 U.S.C. § 1983** ..... ¶¶ 152


**Each count incorporates only the paragraphs it identifies.** No count incorporates all preceding paragraphs. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).

**(42 U.S.C. § 1983 — First and Fourteenth Amendments)**
Filed as of course under Fed. R. Civ. P. 15(a)(1)(A)
**JURY TRIAL DEMANDED**

## I. PRELIMINARY STATEMENT

1. Plaintiff Daniel Benjamin Fleischman is the father of a minor child enrolled at McKeel Academy of Technology, a Florida public charter school operated by Defendant The Schools of McKeel Academy, Inc. He brings this action under 42 U.S.C. § 1983 to redress the abridgment of his rights under the First and Fourteenth Amendments to the Constitution of the United States.

2. This case is narrow and it is documentary. Defendant has twice reduced its decisions to signed writing, and each writing states the reason for the decision on its face. The Court need not infer motive. It need only read the two letters.

3. On August 14, 2026, Defendant issued a signed, prospective, entity-wide written directive to its own personnel restricting with whom Plaintiff may communicate, what he may say, and whether he will receive any answer. The letter states the reason: Plaintiff's emails "have included allegations against McKeel Academy personnel and other parties that are unfounded and inflammatory in nature." That is a restriction imposed because of the content of Plaintiff's speech and the viewpoint it expressed, stated in Defendant's own words.

4. On September 15, 2026, Defendant escalated. In a second signed letter written "on behalf of The Schools of McKeel Academy, Inc.," Defendant enumerated Plaintiff's "violations" of the August plan. Four of the enumerated items are these: Plaintiff's August 25, 2026 email notifying staff "about a lawsuit you filed against McKeel Academy and 101 of its personnel"; his August 26, 2026 email "about various matters, including the lawsuit you filed against McKeel Academy and its personnel"; his September 4, 2026 complaint to Polk County Public Schools; and his September 7, 2026 complaints to Polk County Public Schools, the Office of the Attorney General of Florida, and the Florida Department of Education. Immediately after that list, the letter states: "Accordingly, effective immediately, the Communication Plan that was conveyed to you on August 14, 2026 is being revised and restated as follows."

5. Defendant thus committed to writing, over counsel's signature, that Plaintiff's federal lawsuit and his complaints to three government agencies were violations, and that those violations were the reason for the sanction that followed. The word "Accordingly" supplies the causal connection that Fed. R. Civ. P. 8(a)(2) requires a plaintiff to plead. Defendant supplied it itself.

6. The sanction is severe. Plaintiff — who is barred from every campus his son may attend and therefore has no channel of communication other than writing — is now permitted one email per week, to one person, on one subject; "[a]

response is not guaranteed"; every other communication will be "disregarded"; and if he exceeds the quota, Defendant "will block you from sending emails to all McKeel Academy personnel."

7. Plaintiff asks this Court for a narrow judgment. He does not ask the Court to decide custody or time-sharing, to order or prevent his son's enrollment or withdrawal, to determine what occurred between two children on February 5, 2026, to discipline any student or employee, to find that any person committed a crime, or to award attorney's fees. He asks the Court to declare that Defendant may not treat a federal lawsuit and complaints to government agencies as punishable violations, to enjoin the provisions that do so, and to require that an indefinite exclusion and an indefinite communications ban be accompanied by the rudimentary process the Fourteenth Amendment requires.

8. This pleading is structured to state one claim, against one defendant, on one legal theory, in each count. No count incorporates "all preceding paragraphs." Each count incorporates only the specifically identified paragraphs on which it rests. No defendant is sued in an official capacity. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

## I-A. WHAT THIS PLEADING DOES NOT CLAIM

9. Plaintiff states the following limits on his own claims at the outset, so that no count is read to assert more than it does.

10. **Plaintiff does not claim a constitutional right of access to school property.** He is aware that the Eleventh Circuit has held that a parent's claim challenging school restrictions on access to school property is not cognizable under § 1983 on a theory that parents possess a free-standing right to enter school premises. *Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 462 (11th Cir. 2010); *see also Jackson v. McCurry*, 762 F. App'x 919 (11th Cir. 2019). No count in this pleading asserts such a right. No count asks this Court to order McKeel to admit Plaintiff to any campus.

11. What Plaintiff claims is different in kind. Even where a person has no right to a governmental benefit, and "even though the government may deny him the benefit for any number of reasons," the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests — especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). McKeel was free to manage its campuses. It was not free to sanction Plaintiff because he sued it and complained about it to three government agencies.

12. Nor does Plaintiff claim a right to compel McKeel to answer his correspondence, a right to unlimited communication, a right to enter any building,

a right to be free of neutral anti-harassment, safety, privacy, or records policies, or a right to any relief on behalf of his son.

13. Every count in this pleading rests on the same two propositions: that a government actor may not punish a person for petitioning the courts and the executive agencies of his State, and that an indefinite, standardless restriction imposed without any process is not saved by the fact that the underlying privilege could lawfully have been withheld for a permissible reason.

## I-B. ARTICLE III STANDING

14. **Injury in fact.** Plaintiff is subject, today, to a written directive that limits him to one email per week to one person on four permitted subjects, forbids him to speak with his son's teachers, forbids him to copy any other person on communications about his child, threatens to block him from Defendant's electronic-mail system, and exposes him to immediate law-enforcement referral and criminal prosecution if he is present at any McKeel property or school activity. He has altered his conduct in response. That is a concrete, particularized, actual and ongoing injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–61 (2014).

15. **Traceability.** The injury is caused by Defendant and by no one else. Defendant wrote both directives, Defendant enforces them, and Defendant's charter

sponsor has stated in writing that it neither issued, reviewed, approved, nor ratified them and has "no jurisdiction over the day-to-day operations of a charter school." Ex. C.

16. **Redressability.** A declaration and an injunction directed to Defendant would remove the restrictions, because Defendant alone imposed them and Defendant alone can lift them. McKeel's own counsel has written that "PCPS does not have the ability or authority to reverse a trespass warning issued by McKeel Academy." Ex. K. Nominal damages independently redress the completed violation. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291–92 (2021).

17. **No review of any state-court judgment is sought.** Plaintiff does not ask this Court to review, reverse, modify, or set aside any judgment or order of any state court. The injuries alleged were inflicted by Defendant's own letters of August 14, 2026 and September 15, 2026, not by any state-court judgment, and Plaintiff seeks relief only against Defendant's conduct. No state-court proceeding is pending in which these federal claims could be raised against this Defendant.

## II. JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) and (a)(4) because it seeks to redress the deprivation,

under color of state law, of rights secured by the Constitution and to secure equitable relief under an Act of Congress providing for the protection of civil rights.

19. Plaintiff's claims arise under 42 U.S.C. § 1983, which provides a cause of action against every person who, under color of any statute, ordinance, regulation, custom, or usage of any State, subjects any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

20. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and injunctive relief under Fed. R. Civ. P. 65 and the Court's inherent equitable power.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant is a Florida corporation that resides in this District, and under § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims — the issuance of the August 14, 2026 directive, the issuance of the September 15, 2026 revised directive, and the maintenance of the campus exclusion — occurred in this District.

22. Assignment to the Tampa Division is proper because Defendant operates the schools identified in this pleading in Polk County, Florida, which lies within the Tampa Division. *See* M.D. Fla. Local Rule 1.04.

23. This action was commenced in the United States District Court for the Western District of Pennsylvania, No. 2:26-cv-01778, and was transferred to this District by order of the Honorable J. Nicholas Ranjan entered August 28, 2026. It was docketed in this District on August 31, 2026 and assigned to the Honorable Mary S. Scriven, with referral to the Honorable Natalie Hirt Adams.

24. Plaintiff files this First Amended Verified Complaint as of course under Fed. R. Civ. P. 15(a)(1)(A). No defendant has been served with the original pleading, no summons has issued, and no responsive pleading or Rule 12 motion has been filed. Leave of Court is therefore not required.

## III. PARTIES

25. Plaintiff **Daniel Benjamin Fleischman** is a natural person and a citizen of the United States. He is the father of a minor child, referred to throughout this pleading and in every exhibit only as "Minor Child" in accordance with Fed. R. Civ. P. 5.2(a). Plaintiff asserts only his own constitutional rights in this action. He asserts no claim belonging to his son, and he does not purport to sue in a representative capacity.

26. Plaintiff's address for service and correspondence in this action is 648 Merchant Street, #1026, Ambridge, Pennsylvania 15003. That address is a mailing and correspondence address designated for this litigation. It is not Plaintiff's

residence or usual place of abode, and Plaintiff does not consent to service of process of any kind at that address other than papers in this action served under Fed. R. Civ. P. 5.

27. Defendant **The Schools of McKeel Academy, Inc.** ("McKeel") is a Florida not-for-profit corporation that operates public charter schools in Polk County, Florida under a charter contract with The School Board of Polk County, Florida. Its schools include McKeel Academy of Technology, where Plaintiff's son is enrolled, and South McKeel Academy. McKeel maintains and controls property at, among other locations, 860 N. Grady Avenue, Lakeland, Florida 33815; 1810 W. Parker Street, Lakeland, Florida 33815; 411 N. Florida Avenue, Lakeland, Florida 33801; 1400 Dean Street, Mulberry, Florida 33860; 2222 Edgewood Drive S., Lakeland, Florida 33803; and 303 E. Peachtree Street, Lakeland, Florida 33801.

28. McKeel is the only defendant named in this pleading. McKeel is sued directly as an entity. No individual is named, in any capacity. No defendant is sued in an official capacity, because an official-capacity claim against an officer of an entity that is itself a defendant is duplicative. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Busby*, 931 F.2d at 776.

29. Every other person and entity named in the original pleading is dropped as a party by operation of this amendment. An amendment as of course under Fed. R. Civ. P. 15(a)(1)(A) that omits a party drops that party, and none of

the dropped parties was ever served with process or appeared. Out of an abundance of caution, and to the extent any further step is required, Plaintiff dismisses each of them without prejudice under Fed. R. Civ. P. 41(a)(1)(A)(i) and drops each of them under Fed. R. Civ. P. 21, by the Notice of Dropped Parties filed together with this pleading. No relief is sought against any person or entity other than Defendant McKeel, and the caption of this action should hereafter read *Fleischman v. The Schools of McKeel Academy, Inc.*, without "et al."

## IV. STATE ACTION: McKEEL ACTS UNDER COLOR OF STATE LAW

30. Section 1983 reaches conduct fairly attributable to the State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Eleventh Circuit recognizes three tests — the public-function test, the state-compulsion test, and the nexus/joint-action test — and a plaintiff need satisfy only one. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263 (11th Cir. 2003). Plaintiff pleads facts satisfying the public-function test and, independently, the nexus test.

### A. Florida law declares McKeel's schools to be public schools.

31. The Florida Legislature has declared, in terms admitting of no qualification, that "[a]ll charter schools in Florida are public schools." Fla. Stat. §

1002.33(1). That is not a funding characterization; it is a statutory definition of the institution's legal character.

32. A charter school operates under "a written contractual agreement, called a charter," whose "terms and conditions for the operation of a charter school shall be set forth by the sponsor and the applicant." Fla. Stat. § 1002.33(7). McKeel operates under such a charter with The School Board of Polk County, Florida.

33. A charter school is therefore the instrument through which the State of Florida discharges its own constitutional obligation to "make adequate provision . . . for a uniform, efficient, safe, secure, and high quality system of free public schools." Fla. Const. art. IX, § 1(a). McKeel educates Florida children at public expense, in fulfillment of Florida's compulsory-attendance law, without charging tuition. Providing free public education to the children of a State is a function "traditionally the exclusive prerogative of the State."

34. The Fourth Circuit, sitting en banc, has squarely held on materially indistinguishable facts that a privately operated public charter school is a state actor when it regulates the students and families it serves, because it performs the traditionally exclusive public function of delivering free public education and is created and controlled by the State for that purpose. *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 2657 (2023).

35. Two lines of authority that Defendant may invoke do not reach this case, and Plaintiff addresses them now. First, decisions holding that a corporation operating a charter school is not a "public entity" within the statutory definition of Title II of the Americans with Disabilities Act — such as *Schwarz v. The Villages Charter Sch., Inc.*, 165 F. Supp. 3d 1153 (M.D. Fla. 2016) — construe a **statutory** term of art, 42 U.S.C. § 12131(1), which reaches only a "State or local government" and its "department, agency, special purpose district, or other instrumentality." Whether an entity falls within that definition is a different question from whether it acts "under color of" state law for purposes of § 1983. Many private actors are state actors under § 1983 without being governmental instrumentalities for statutory purposes. *See West*, 487 U.S. at 54–57 (private physician under contract).

36. Second, decisions holding that a charter-school corporation is not a public entity for purposes of **state-law** tort-claim, immunity, or fee-shifting statutes turn on the construction of those statutes and on state-law immunities. They do not address the federal fair-attribution inquiry, and they do not control it.

37. *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), is not to the contrary and does not govern. *Rendell-Baker* concerned a **private** school — one Illinois and Massachusetts law did not declare to be a public school — and it concerned that school's **internal personnel decisions**, which the Court held were not compelled

or influenced by any state regulation. 457 U.S. at 841–42. Here, by contrast, Florida law declares McKeel's schools to be public schools by statutory definition, Fla. Stat. § 1002.33(1); the challenged conduct is not an internal employment decision but the regulation of a parent's access to, and communication with, a public school concerning his own child; and the enforcement mechanism McKeel invokes is a state criminal statute available only to school authorities.

**B. McKeel wields a coercive power the State grants only to schools.**

38. The August 14, 2026 letter states that Plaintiff is "currently trespassed from all McKeel Academy campuses, offices, and other properties," enumerates six specific addresses plus "[a]ny other properties owned, leased, or controlled by McKeel Academy" and "[a]ny properties where a McKeel Academy school event or school activity is taking place," and warns that if Plaintiff is found at any of them, "law enforcement will be called immediately and McKeel Academy will seek prosecution for illegal trespass." Ex. A.

39. The authority to exclude a person from the grounds of a school and to procure his arrest and prosecution for returning is conferred by Florida's school-trespass statute, Fla. Stat. § 810.097, which vests that authority in "the principal or his or her designee" of a school. It is a power the State confers on school officials in their capacity as school officials. A private landowner has no comparable power

to procure a criminal prosecution of a parent for entering a school where his child is enrolled.

40. When McKeel invoked that statutory power — and when it threatened to invoke it again "immediately" — it exercised authority "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted).

**C. This Court has already identified McKeel as the operative actor.**

41. In *Fleischman v. Polk County School Board*, No. 8:25-cv-02479-WFJ-TGW, the Honorable William F. Jung dismissed Plaintiff's claims against The School Board of Polk County, Florida and its Superintendent, reasoning that "[t]he Florida statute that governs charter schools supports this conclusion" and that "Florida law assigns operational authority to the charter school's governing board, not the sponsoring school district," citing Fla. Stat. § 1002.33(9)(i) ("The governing body of the charter school shall exercise continuing oversight over charter school operations."). Order, Doc. 52 at 10, *Fleischman v. Polk Cnty. Sch. Bd.*, No. 8:25-cv-02479-WFJ-TGW (M.D. Fla. Apr. 9, 2026). Ex. O.

42. That same Order recorded, in footnote 2, that the district defendants there did not contest that Plaintiff's communications to the charter school constituted protected speech, and that the Court assumed as much "since all charter

schools in Florida are, by law, public schools. *See* Fla. Stat. § 1002.33(1)." *Id.* at 13 n.2.

43. McKeel has taken the same position in writing. On March 26, 2026, McKeel's counsel wrote that McKeel, and not Polk County Public Schools, made and maintains the trespass decision, and that "PCPS does not have the ability or authority to reverse a trespass warning issued by McKeel Academy." Ex. K. On July 28, 2026, McKeel's counsel wrote that McKeel is self-governed and operated by an independent nonprofit corporation. Ex. D.

44. On September 14, 2026, Candy Amato, Senior Director of the Office of Charter Schools of Polk County Public Schools — McKeel's charter sponsor — answered Plaintiff's written verification request. She stated that the district was aware of the campus/trespass restriction; that it was **not** aware of the directive routing Plaintiff's communications through Principal Benson and barring contact with his son's teachers; that the district had **not** reviewed, approved, ratified, endorsed, or objected to either restriction; and that "PCPS has no jurisdiction over the day-to-day operations of a charter school." Ex. C.

45. The legal consequence is that McKeel, and McKeel alone, is the entity that acted. There is no district actor to blame and no district actor to sue. The State of Florida has assigned the operation of these public schools to McKeel; McKeel

operates them; and McKeel is answerable under § 1983 for the constitutional consequences of how it operates them.

## V. FINAL POLICYMAKING AUTHORITY

46. A municipal or quasi-municipal entity is liable under § 1983 where "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff must plead that (1) his constitutional rights were violated; (2) the entity had a custom or policy constituting deliberate indifference to that right; and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

47. The second element may be established by any of three theories: an official policy; acquiescence by final policymakers in a longstanding practice constituting standard operating procedure; or ratification by a final policymaker of both the decision and the unconstitutional basis for it. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016); *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002).

48. Plaintiff pleads the **first** theory — official policy — as his primary theory, and pleads the third — ratification — only in the alternative. He does not plead the second theory and does not rely on it.

49. Florida law fixes final policymaking authority for the operation of a charter school in the charter school's governing body: "[t]he governing body of the charter school shall exercise continuing oversight over charter school operations." Fla. Stat. § 1002.33(9)(i). McKeel's governing body is the board of directors of The Schools of McKeel Academy, Inc.

50. The August 14, 2026 letter is not a subordinate's improvisation. It was written by outside counsel retained by McKeel, on the letterhead of The Arnold Law Firm, over the signature of Braxton A. Padgett, Esq., B.C.S., Board Certified in Education Law, and it speaks in the voice of the corporation: "Accordingly, effective immediately, **McKeel Academy has directed its personnel as follows**." Ex. A (emphasis added).

51. A directive issued by an entity to "its personnel," effective immediately, binding prospectively, and governing how every employee of the entity must treat a member of the public, is an official policy of that entity. It is the paradigm case, not a marginal one. Nothing about it depends on repetition, on other victims, or on a course of dealing.

52. The September 15, 2026 letter is of the same character and is more explicit still. It is written "on behalf of The Schools of McKeel Academy, Inc."; it declares that "the Communication Plan that was conveyed to you on August 14, 2026 is being revised and restated as follows"; and it commits the entity to future

conduct — that "McKeel Academy will block you from sending emails to all McKeel Academy personnel" if Plaintiff exceeds his quota. Ex. B. An entity that announces what it "will" do to a person prospectively has adopted a policy toward that person.

53. Plaintiff's official-policy theory requires no allegation of a pattern, of other victims, or of prior similar incidents. A written policy is a policy the first time it is applied. The pattern requirement belongs to the custom theory, which Plaintiff does not plead.

54. **Alternative theory one — delegation.** If the directives are characterized as the acts of McKeel's principal or of McKeel's retained counsel rather than of its governing body, then McKeel delegated to them final authority to fix the terms on which a parent may communicate with the school and be present on its property, and a single decision by an official with such delegated final authority is itself an act of official policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). The decision was final in fact: no McKeel procedure permitted Plaintiff to seek review of it, no McKeel officer offered review, and the charter sponsor disclaimed authority to review it. Ex. C; Ex. K. Authority that is subject to no meaningful review is final policymaking authority. *Cf. Willingham v. City of Valparaiso*, 638 F. App'x 903 (11th Cir. 2016) (unpublished) (final policymaker where no meaningful review opportunity existed).

55. **Alternative theory two — ratification.** If the August 14, 2026 directive is characterized as the decision of a subordinate, McKeel's governing body ratified both that decision and the basis for it. Ratification requires the final policymaker to approve "not only the subordinate's decision and the basis for it," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality op.); *Gattis v. Brice*, 136 F.3d 724 (11th Cir. 1998); *accord Matthews*, 294 F.3d at 1297, and requires that the policymaker have had an opportunity to review the decision.

56. The opportunity to review is pleaded as fact, not asserted as a conclusion. On August 25 and August 26, 2026 Plaintiff notified McKeel staff in writing of the federal lawsuit. On September 4 and September 7, 2026 he copied McKeel personnel on his written complaints to Polk County Public Schools, the Office of the Attorney General of Florida, and the Florida Department of Education. McKeel's September 15, 2026 letter recites each of those communications by date, which establishes that McKeel received and read them. Ex. B. McKeel thus had actual notice, for three weeks, that Plaintiff contended the August 14 directive was unlawful retaliation.

57. Having had that notice and that opportunity, McKeel did not rescind, narrow, or review the directive. It escalated it, and it stated in the escalating document that Plaintiff's lawsuit and agency complaints were the "violations" prompting the escalation. That is approval of the decision *and* of its basis, in a

single signed writing. *Praprotnik*, 485 U.S. at 127; *Gattis*, 136 F.3d 724; *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989) (ratification chargeable to the entity where authorized policymakers approve the subordinate's decision and the basis for it).

58. Unlike the ratification allegations this Court found insufficient in the prior action, these allegations do not ask the Court to infer that a policymaker "knew about the alleged unconstitutional motive or basis." Doc. 52 at 9. The basis is written out, itemized, dated, and signed. McKeel identified its own reasons.

59. Plaintiff further alleges, on information and belief, that no officer, director, or employee of McKeel has rescinded, modified, disavowed, or countermanded either directive, and that both remain in force as of the date of this pleading.

60. The sponsor's September 14, 2026 answer forecloses the only competing candidate for final policymaking authority. Polk County Public Schools disclaimed awareness of the communication directive, disclaimed review, approval, ratification, endorsement, and objection, and disclaimed "jurisdiction over the day-to-day operations of a charter school." Ex. C. If McKeel is not the final policymaker for its own communication and campus-access decisions, no one is — and a constitutional injury would be left without any responsible party, which is not the law.

## VI. FACTUAL ALLEGATIONS

### A. Plaintiff's son is enrolled; Plaintiff gives written notice of parental disagreement.

61. Plaintiff's son is a minor student enrolled at McKeel Academy of Technology, a school operated by Defendant. Plaintiff is his father. Plaintiff has never been adjudicated to lack parental rights with respect to his son's education, and no court has entered any order restricting Plaintiff's access to his son's educational records or to his son's teachers.

62. On July 27, 2026, Plaintiff sent McKeel a formal written parental-disagreement notice concerning his son's continued enrollment. In that notice Plaintiff (a) stated his disagreement, (b) requested the identity of the person responsible for the enrollment decision and the process available for review, and (c) requested preservation of enrollment, safety, parent-communication, and attendance records. Ex. D.

63. On July 28, 2026, McKeel's counsel responded. The response stated that McKeel is self-governed and operated by an independent nonprofit corporation, that McKeel does not involve itself in custody issues, and that the school would follow applicable court orders. It did not identify the decisionmaker and did not describe any process for review. Ex. D.

64. Plaintiff's July 27, 2026 notice was speech addressed to a public school concerning the education, safety, and records of his own child, and a request that the school's decision be reviewed. It is protected by the First Amendment's Speech and Petition Clauses. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019).

**B. What Plaintiff was petitioning about.**

65. Plaintiff pleads the following so the Court knows the subject matter of the speech McKeel restricted. The First Amendment analysis turns in part on whether Plaintiff's communications addressed a matter of public concern, and they did: the physical safety of children at a public school, and how that school classified, reviewed, and closed a reported incident between two students.

66. On or about February 5, 2026, an incident occurred during physical education at South McKeel Academy involving Plaintiff's son and another student. The school's student-behavior portal recorded that incident under the category **"Major Offenses,"** coded for **"Abusive/Inappropriate Language or Actions."** Ex. L.

67. On March 6, 2026, Plaintiff sent a written notice to school and district personnel asking how the incident had been classified and handled, who had reviewed it, whether parents and any outside authority had been notified, and what safety measures had been taken. In the same notice he demanded preservation of

the portal entry and its edit and audit history, the incident and discipline records, internal communications, staff and witness information, counseling and risk-assessment records, video, Title IX and Safe Schools communications, and communications with external agencies. Ex. M.

68. On or about March 19, 2026, South McKeel Academy Principal Lisa Hancock responded in a single sentence: "After further discussion with the PE teacher, it was determined that the incident . . . was the result of horseplay and no further action was needed." Ex. L. Plaintiff received no other written explanation of how the incident was reviewed, by whom, under what policy or framework, or on what authority an entry logged under "Major Offenses" was closed as horseplay. He was never told whether the incident was evaluated under any Title IX, Safe Schools, child-welfare, or sexual-misconduct framework. As of the date of this pleading, he still has not been told.

69. Plaintiff's concern was not idiosyncratic and it was not new. The Florida Department of Education Office of Safe Schools acknowledged receipt of his correspondence on September 23, 2025, and the Florida Department of Children and Families, Office of Inspector General, acknowledged receipt on February 27, 2026 under reference OIG 2025080662. Ex. P. He pleads these acknowledgments only to show that his petitioning was directed to the authorities the State designates to receive it, and was received.

70. On August 14, 2026, at approximately 10:42 a.m. Eastern, Plaintiff sent McKeel a message he expressly identified as a **mandatory-reporter notification**. Ex. F. Florida law obliges any person who knows or has reasonable cause to suspect that a child has been abused, abandoned, or neglected to report it. Fla. Stat. § 39.201(1)(a). A parent who tells a public school that he is making such a report is engaged in speech the State affirmatively requires, and it is difficult to imagine speech more squarely on a matter of public concern.

71. **Plaintiff asks this Court to decide none of it.** He does not ask the Court to determine what occurred between the two children on February 5, 2026, to find that the incident was or was not properly classified, to find that any person committed any offense, or to grant any relief on his son's behalf. He pleads these facts for one purpose only: to identify what he was saying when McKeel decided that what he was saying would be restricted. Whether his concerns were ultimately well founded is irrelevant to every count in this pleading, because the First Amendment protects a citizen's petition to his government whether or not the government agrees with it.

### C. Plaintiff's August 11–14, 2026 communications.

72. On August 11, 2026, Plaintiff sent McKeel administrators a written request for clarification concerning parental access, enrollment information, educational records, and the identity of the responsible decisionmaker. Ex. E.

73. On August 12, 2026, Principal Kim Benson responded to Plaintiff twice — first with parent-portal information, and then confirming an update to Plaintiff's parent-contact information. Ex. E. Nothing in either response stated that Plaintiff's communications were improper, excessive, or inflammatory, and nothing announced any restriction.

74. On August 14, 2026, at approximately 10:42 a.m. Eastern, Plaintiff sent a school-directed message that he expressly identified as a mandatory-reporter notification. Ex. F.

75. On August 14, 2026, at approximately 12:01 p.m. Eastern, Plaintiff sent an email concerning child-safety issues to identified McKeel leadership, administrators, and counsel. Ex. F.

76. Each of the communications described in paragraphs 62–75 was a communication by a parent to a public school about the education, records, safety, discipline, and well-being of his own child, and about the school's handling of a reported incident between students. None contained a threat. None sought entry onto any campus. Each is protected speech and protected petitioning.

**D. Hours later, McKeel issues the August 14, 2026 Directive.**

77. Later on August 14, 2026 — the same day as, and within hours of, the two communications described above — McKeel's counsel Braxton A. Padgett, Esq. transmitted to Plaintiff by electronic mail a signed two-page letter on The

Arnold Law Firm letterhead captioned "COMMUNICATION PLAN & STATUS OF TRESPASS." A true and correct copy is attached as Exhibit A.

78. The letter states its reason in its own words:

> You have engaged in a pattern of sending lengthy and duplicative emails regarding your concerns to large groups of individuals, many of whom are not employees of McKeel Academy and have no authority or ability to address the issues raised in your communications. Despite prior communications from my office, these emails have continued and **have included allegations against McKeel Academy personnel and other parties that are unfounded and inflammatory in nature**.

79. The letter then directs: "Accordingly, effective immediately, McKeel Academy has directed its personnel as follows," and sets out six numbered provisions. Ex. A. The provisions material to this action are:

- **Directive 1.** "All communications from you concerning your child, school records, school policies, grievances, or other school-related matters must be directed solely to the Principal of McKeel Academy of Technology, Ms. Kim Benson. You are not permitted to directly contact or copy any other individuals on such emails or communications. You are also not permitted to directly contact any of your son's teachers."
- **Directive 2.** "McKeel Academy personnel will no longer respond to any communications sent via mass emails."
- **Directive 3.** "McKeel Academy personnel will not respond to communications that are duplicative of prior communications or have previously been answered."
- **Directive 4.** "Communications with McKeel Academy personnel must be productive and cordial. Communications that include inflammatory language will be disregarded. Phone or virtual conversations will be terminated if you do not abide by these requirements."

- **Directive 5.** "McKeel Academy reserves the right to limit the number of communications you may send per week if the volume exceeds a reasonable number."

80. The letter defines no term. It does not define "inflammatory." It does not define "productive and cordial." It does not define "duplicative." It identifies no standard by which McKeel personnel are to decide whether a given communication meets those descriptions, identifies no person who makes that decision, and provides no way to contest it.

81. The letter contains no end date, no duration, no schedule of review, and no procedure by which Plaintiff may seek modification or rescission.

82. Under the heading "Status of Trespass," the same letter states that Plaintiff is "currently trespassed from all McKeel Academy campuses, offices, and other properties, **including McKeel Academy of Technology, where your son is now enrolled**," lists the six addresses identified in paragraph 27, adds "[a]ny other properties owned, leased, or controlled by McKeel Academy" and "[a]ny properties where a McKeel Academy school event or school activity is taking place," and warns: "If you are found to be present at any of these locations, law enforcement will be called immediately and McKeel Academy will seek prosecution for illegal trespass." Ex. A.

83. The August 14, 2026 letter is the operative statement of Plaintiff's present exclusion from every campus his son may attend. Plaintiff pleads the exclusion as a present and continuing restriction, established by the four corners of the August 14, 2026 letter. He does not plead, and does not ask this Court to adjudicate, the validity of any act that occurred before July 27, 2026.

**E. Plaintiff sues, and complains to three government agencies.**

84. On August 25, 2026, Plaintiff sent an email notifying McKeel staff about the federal civil-rights lawsuit he had filed. Ex. G.

85. On August 26, 2026, Plaintiff sent an email addressing various matters, including that lawsuit. Ex. G.

86. On August 31, 2026, this action was docketed in this District following transfer from the Western District of Pennsylvania.

87. On September 4, 2026, Plaintiff submitted a written complaint to Polk County Public Schools and copied McKeel personnel. Ex. H.

88. On September 7, 2026, Plaintiff submitted written complaints to Polk County Public Schools, the Office of the Attorney General of Florida, and the Florida Department of Education, and copied McKeel personnel. Ex. H.

89. Filing a civil-rights action in a United States District Court, and submitting written complaints to a school district, a state attorney general, and a state department of education, are core exercises of the right "to petition the

Government for a redress of grievances." U.S. Const. amend. I. There is no more paradigmatic protected activity in the entire First Amendment. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387–89 (2011); *DeMartini*, 942 F.3d at 1288.

**F. The charter sponsor disclaims all involvement.**

90. On September 14, 2026, Candy Amato, Senior Director of the Office of Charter Schools of Polk County Public Schools, answered Plaintiff's written verification request. Her answers were: the district **was** aware of the campus/trespass restriction; the district was **not** aware of the directive routing Plaintiff's communications through Principal Benson or of the bar on contacting his son's teachers; the district had **not** reviewed, approved, ratified, endorsed, or objected to either restriction; and the district received **no** notice of the August 2026 directive. She added that "PCPS has no jurisdiction over the day-to-day operations of a charter school." Ex. C.

**G. The September 15, 2026 Revised Directive — McKeel states its reasons.**

91. On September 15, 2026, at approximately 2:34 p.m. Eastern — eight days after Plaintiff's September 7, 2026 agency complaints, twenty days after his August 25, 2026 notice of the lawsuit, and fifteen days after this action was docketed in this District — McKeel's counsel transmitted to Plaintiff by electronic mail a signed three-page letter captioned "FOLLOW-UP ON COMMUNICATION

PLAN," written "on behalf of The Schools of McKeel Academy, Inc." A true and correct copy of the letter and its transmission email is attached as Exhibit B.

92. The letter recites what it calls "limited examples" of Plaintiff's "violations" of the August 14 plan. Four of the enumerated items are:

- Plaintiff's **August 25, 2026** email notifying staff "about a lawsuit you filed against McKeel Academy and 101 of its personnel";
- Plaintiff's **August 26, 2026** email "about various matters, including the lawsuit you filed against McKeel Academy and its personnel";
- Plaintiff's **September 4, 2026** copying of McKeel personnel on a complaint to Polk County Public Schools; and
- Plaintiff's **September 7, 2026** copying of McKeel personnel on complaints to Polk County Public Schools, the Office of the Attorney General, and the Florida Department of Education.

93. Immediately after that list, the letter states: "Accordingly, effective immediately, the Communication Plan that was conveyed to you on August 14, 2026 is being revised and restated as follows." Ex. B.

94. The word "Accordingly" is McKeel's own. It means *because of the foregoing*. The foregoing includes Plaintiff's federal lawsuit and his complaints to three government agencies. McKeel has stated, in writing and over counsel's signature, that Plaintiff's petitioning is why the sanction issued.

95. The revised plan provides, among other things, that: all of Plaintiff's communications "concerning your child, school records, school policies, grievances, or any other matter" must go solely to Principal Benson; Plaintiff may

not contact or copy any other McKeel personnel; Plaintiff may not contact his son's teachers; if Plaintiff fails to comply, "McKeel Academy will block you from sending emails to all McKeel Academy personnel" other than addresses to be designated later; Plaintiff is limited to "one (1) email per week," which "must be related to your student's academics, behavior, discipline, or well-being," consumed by the first email he sends each week and resetting Mondays at 12:00 a.m.; "[a] response is not guaranteed"; all further emails will be "disregarded" unless an emergency is supported by "clear and articulable facts"; and the August 14 trespass "remains in effect." Ex. B.

96. The revised plan, like the plan it replaced, contains no end date, no duration, no review schedule, and no procedure for seeking modification or rescission. It defines neither "clear and articulable facts" nor the standard by which McKeel will decide whether an email is "related to" the four permitted subjects.

97. On the same day, Principal Benson wrote to Plaintiff that McKeel would keep his son enrolled unless both parents agreed to withdrawal or the school received a court order directing otherwise. Ex. I.

**H. Plaintiff asks McKeel to identify its written authority. McKeel does not answer.**

98. On September 15, 2026, at 2:22 p.m. Eastern, Plaintiff sent Principal Benson a narrow written request. He asked McKeel to identify the specific court

order, custody provision, statute, policy, or other written authority for the restrictions on educational information, direct teacher communication, and parent pickup and access — or, if no such written authority exists, to identify the person who decided. Ex. I.

99. Plaintiff has received no substantive answer to that request. As of the date of this pleading, McKeel has never identified any court order, custody provision, statute, regulation, written policy, or other written authority for any of the restrictions it has imposed on him.

100. McKeel has never afforded Plaintiff notice of the specific conduct alleged to justify his exclusion from campus, an opportunity to respond to it, a hearing of any kind, a written statement of reasons beyond the two letters, a stated duration, a review date, or any avenue of appeal.

**I. The chill is actual, and it is measurable.**

101. Plaintiff intends to continue communicating lawfully and without threats about his son's education, records, safety, discipline, behavior, and well-being. He does not intend to contact any employee's home or personal telephone, to record any conversation unlawfully, to send unreasonable volumes of email, to threaten anyone, or to enter school property without authorization. He seeks no declaration or injunction permitting any of those things.

102. Plaintiff's conduct has in fact changed. He now must decide each week which single question about his son is worth his one permitted email, knowing that he may receive no answer and that sending a second one may result in his being blocked from the school's electronic-mail system entirely. He has not sent communications he would otherwise have sent.

103. Because Plaintiff is barred from every campus and forbidden to speak with his son's teachers, written communication is the only channel of parental participation available to him. The restriction of that channel to one message per week, to one recipient, on four permitted subjects, with no guaranteed answer, is the restriction of his entire ability to participate in his child's education.

104. Plaintiff has incurred time and out-of-pocket expense adapting to these restrictions and pursuing clarification and review, and has lost the ability to raise time-sensitive matters concerning his son when they arise.

105. The restrictions remain in force as of the date of this pleading. They are prospective by their terms, they have no expiration, and McKeel has refused to rescind them. The injury is present and continuing, not past and completed.

## VII. RELATIONSHIP TO THE PRIOR ACTION

106. Plaintiff previously litigated *Fleischman v. Polk County School Board*, No. 8:25-cv-02479-WFJ-TGW (M.D. Fla.), against The School Board of

Polk County, Florida and Superintendent Frederick Heid. That action was dismissed by Order entered April 9, 2026. Doc. 52. Ex. O. Plaintiff states the following so that the relationship between the two actions is clear on the face of this pleading.

107. **Different defendant.** McKeel was not a party to the prior action. No relief was sought against it, none was entered against it, and it appeared in no capacity.

108. **No privity.** McKeel is a separate Florida corporation, self-governed and independently operated. Fla. Stat. § 1002.33(9)(i). The charter sponsor has stated in writing that it has "no jurisdiction over the day-to-day operations of a charter school," that it was unaware of the communication directive, and that it neither reviewed, approved, ratified, endorsed, nor objected to the restrictions at issue here. Ex. C. The prior defendants could not have represented McKeel's interests because they disclaimed any authority over the conduct at issue.

109. **Different conduct, arising later.** Every act challenged in this pleading occurred on or after July 27, 2026 — more than three months after the April 9, 2026 Order. The August 14, 2026 directive, the September 15, 2026 revised directive, the one-email-per-week cap, the threatened blocking sanction, and the enumeration of Plaintiff's lawsuit and agency complaints as "violations" did not exist and could not have been litigated when the prior action was decided.

110. **Different transaction.** The prior action concerned a December 2024 campus trespass warning and whether district officials were responsible for it. This action concerns whether a charter-school corporation may punish a parent for filing a federal lawsuit and complaining to state agencies, and whether it may impose an indefinite communications ban and an indefinite campus exclusion without any process at all.

111. Plaintiff does not seek to relitigate any claim adjudicated in the prior action, does not seek any relief against The School Board of Polk County, Florida or Frederick Heid, and does not ask this Court to revisit the April 9, 2026 Order. He cites that Order only for what it decided about who holds operational authority over a Florida charter school. Ex. O.

## COUNT I

### FIRST AMENDMENT RETALIATION — 42 U.S.C. § 1983
**The September 15, 2026 Revised Directive**
(Against Defendant The Schools of McKeel Academy, Inc.)

112. Plaintiff incorporates paragraphs 9–17, 30–44, 46–59, 84–88, 91–96, and 101–104 as though fully set forth herein. No other paragraph is incorporated into this Count.

113. The elements of a First Amendment retaliation claim in this Circuit are: "(1) the plaintiff engaged in constitutionally protected speech, such as his right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1281 (11th Cir. 2025) (citation modified).

114. **Element one — protected activity.** Plaintiff filed a federal civil-rights action against McKeel, and submitted written complaints to Polk County Public Schools, the Office of the Attorney General of Florida, and the Florida Department of Education. Access to the courts and complaint to executive agencies are the historical core of the Petition Clause. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387–89 (2011); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288

(11th Cir. 2019). Plaintiff's notifications to school staff concerning that lawsuit are likewise protected speech on a matter of public concern.

115. **Element two — adverse effect.** The question is objective: whether the conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bailey v. Wheeler*, 843 F.3d 473, 481 (11th Cir. 2016) (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005)); *Bennett*, 423 F.3d at 1251 (objective standard). The September 15, 2026 revised directive (a) reduces Plaintiff to one email per week, to one person, on four permitted subjects; (b) guarantees no response; (c) directs that everything else be "disregarded"; (d) threatens to "block" Plaintiff from the school's entire electronic-mail system; and (e) restates that Plaintiff remains excluded from every campus on pain of arrest. A person of ordinary firmness, told that his lawsuit and his agency complaints are "violations" and that further violations will sever his only remaining channel to his child's school, would be deterred. Indeed, the Eleventh Circuit has held that "[t]he threat of arrest is the quintessential retaliatory conduct that would deter a person of ordinary firmness from exercising First Amendment rights." *Turner v. Williams*, 65 F.4th 564, 580 (11th Cir. 2023); *accord Huggins*, 151 F.4th at 1281–82 (threat of arrest and removal constituted adverse action); *Sheets v. Pribble*, No. 2:25-cv-500-KCD-NPM, 2026 WL 681823, at 3 *(M.D. Fla. Mar. 11, 2026) (trespass warning);* Prieto v. Cherokee Cnty. Sch. Dist.*, No. 1:24-cv-01074-ELR, 2025 WL 3691409

(N.D. Ga. May 30, 2025) (criminal-trespass warning issued in retaliation for a parent's criticism of school policies stated a First Amendment claim; reasonableness and viewpoint neutrality could not be resolved on a motion to dismiss).

116. That McKeel could lawfully have restricted Plaintiff's campus presence for a permissible reason does not save a restriction imposed for an impermissible one. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Plaintiff asserts no right to be on campus; he asserts the right not to be punished for suing and for complaining to the government. *See supra* ¶¶ 9–12.

117. **Element three — causation.** Plaintiff must show that his protected activity was a but-for cause of the adverse action. *Huggins*, 151 F.4th at 1282; *Turner*, 65 F.4th at 581; *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). Causation here does not rest on inference. It rests on Defendant's own document. The September 15, 2026 letter enumerates the lawsuit and the agency complaints as "violations," and then states: "**Accordingly**, effective immediately, the Communication Plan that was conveyed to you on August 14, 2026 is being revised and restated as follows." Ex. B (emphasis added). Defendant identified the cause; Plaintiff need only quote it.

118. **Causation is independently established by temporal proximity and by Defendant's knowledge of Plaintiff's viewpoint.** Close temporal

proximity supports a causal relationship. *Akins v. Fulton Cnty.*, 420 F.3d 1293, 1298–99, 1305 (11th Cir. 2005). The September 7, 2026 agency complaints and the September 15, 2026 revised directive are **eight days** apart. This pleading states the date of every protected communication and the date of every adverse act, so that the Court may measure the interval precisely — the specificity whose absence was fatal in the prior action. *Compare* Doc. 52 at 15. And Defendant's knowledge of Plaintiff's viewpoint is not inferred: Defendant catalogued that viewpoint by date in its own letter. *See Huggins*, 151 F.4th at 1282 (temporal proximity together with the defendant's knowledge of the plaintiff's viewpoint supported causation).

119. The September 15, 2026 revised directive is an official policy of McKeel. It was issued "on behalf of The Schools of McKeel Academy, Inc."; it revises and restates an entity-wide directive to McKeel's own personnel; and it commits the entity to prospective conduct. *Monell*, 436 U.S. at 690–91; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). In the alternative, it ratifies both the August 14, 2026 decision and the unconstitutional basis for it, because it expressly re-adopts that plan and expressly recites the reasons. *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002).

120. McKeel acted under color of state law. Fla. Stat. § 1002.33(1); *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022) (en banc); *West v. Atkins*, 487 U.S. 42, 49 (1988).

121. As a direct and proximate result, Plaintiff's rights under the First Amendment, as applied to the States through the Fourteenth Amendment, have been and continue to be abridged. Plaintiff has suffered the abridgment of a constitutional right, which is itself a completed injury supporting an award of nominal damages, *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291–92 (2021), together with actual out-of-pocket loss and lost time.

## COUNT II

### FIRST AMENDMENT RETALIATION — 42 U.S.C. § 1983
**The August 14, 2026 Directive**
(Against Defendant The Schools of McKeel Academy, Inc.)

122. Plaintiff incorporates paragraphs 9–17, 30–44, 46–59, 61–82, and 101–104 as though fully set forth herein. No other paragraph is incorporated into this Count.

123. The elements of a First Amendment retaliation claim in this Circuit are: "(1) the plaintiff engaged in constitutionally protected speech, such as his right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1281 (11th Cir. 2025) (citation modified).

124. **Element one.** Plaintiff's July 27, 2026 parental-disagreement notice, his August 11, 2026 request for clarification, his August 14, 2026 mandatory-reporter notification, and his August 14, 2026 child-safety email were speech by a parent to a public school about his own child's education, records, safety, and well-being, and requests that the school's decisions be reviewed. Each is protected. *DeMartini*, 942 F.3d at 1288.

125. **Element two.** The August 14, 2026 directive confines Plaintiff to a single authorized recipient, forbids him to contact his son's teachers, forbids him to copy any other person, authorizes McKeel personnel to disregard any communication they deem "inflammatory" or "duplicative," reserves a power to cap his weekly volume, and restates that he is excluded from every campus on pain of immediate law-enforcement referral and prosecution. Ex. A. That would deter a person of ordinary firmness. *Bailey*, 843 F.3d at 481; *Turner*, 65 F.4th at 580; *Huggins*, 151 F.4th at 1281–82; *Sheets*, 2026 WL 681823, at *3;* Prieto, *2025 WL 3691409. That McKeel might lawfully have imposed some restriction for a permissible reason is no defense to one imposed because of the content of Plaintiff's allegations.* Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

126. **Element three — causation.** The letter states its own but-for cause. It issued because Plaintiff's emails "have included **allegations against McKeel Academy personnel and other parties that are unfounded and inflammatory in nature**." Ex. A (emphasis added). An entity that restricts a speaker's communications because of the allegations those communications contain has acted because of the speech. *Nieves*, 587 U.S. at 398; *Turner*, 65 F.4th at 581.

127. **Temporal proximity is measured in hours.** Plaintiff sent the mandatory-reporter notification at approximately 10:42 a.m. and the child-safety

email at approximately 12:01 p.m. on August 14, 2026. McKeel issued the directive later the same day. *Akins*, 420 F.3d at 1298–99, 1305.

128. The August 14, 2026 directive is an official policy of McKeel: it is a signed, prospective, entity-wide instruction that, in its own words, "McKeel Academy has directed its personnel" to follow, effective immediately. Ex. A; *Monell*, 436 U.S. at 690–91; *Pembaur*, 475 U.S. at 480–81. In the alternative, McKeel ratified it and its stated basis on September 15, 2026. *Matthews*, 294 F.3d at 1297.

129. McKeel acted under color of state law. Fla. Stat. § 1002.33(1); *West*, 487 U.S. at 49.

130. As a direct and proximate result, Plaintiff's First Amendment rights have been and continue to be abridged, entitling him to declaratory relief, injunctive relief, nominal damages, and actual damages.

## COUNT III

### FIRST AMENDMENT — CONTENT- AND VIEWPOINT-BASED RESTRICTION AND UNCONSTITUTIONAL PRIOR RESTRAINT, AS APPLIED — 42 U.S.C. § 1983

**Directives 1, 3, 4 and 5 and the September 15, 2026 Revisions**

(Against Defendant The Schools of McKeel Academy, Inc.)

131. Plaintiff incorporates paragraphs 9–17, 30–44, 46–59, 77–82, 91–96, and 101–104 as though fully set forth herein. No other paragraph is incorporated into this Count.

132. A restriction on speech is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Viewpoint discrimination — restriction aimed at the speaker's particular position rather than the subject — is "an egregious form of content discrimination" and is impermissible in every forum. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

133. The August 14, 2026 directive is content-based on its face. It issued because Plaintiff's communications "have included allegations against McKeel Academy personnel and other parties that are unfounded and inflammatory in nature." Ex. A. One cannot apply that criterion without reading the message and evaluating what it says. It is also viewpoint-based: a communication praising McKeel personnel would contain no "allegations against" them and would not trigger the restriction.

134. Directive 4 conditions McKeel's willingness to receive Plaintiff's speech on its being "productive and cordial" and provides that communications "that include inflammatory language will be disregarded." Ex. A. A civility condition enforced by a government actor against a particular speaker, with no definition and no standards, licenses officials to suppress criticism they find disagreeable. It is content-based and, as applied to Plaintiff, viewpoint-based. *Accord Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338 (N.D. Ga. 2022) (school-board policy barring "abusive" remarks constituted viewpoint discrimination, and a categorical ban on an individual's participation was not narrowly tailored and left open no ample alternative channel of communication).

135. The September 15, 2026 revision compounds the defect. It limits Plaintiff's one permitted weekly email to a fixed list of four subjects — "your student's academics, behavior, discipline, or well-being" — and directs that everything else be "disregarded." Ex. B. That is a subject-matter rule enforced against one speaker. A parent's grievance about how the school handled a reported incident, his request for the identity of a decisionmaker, or his objection to the communication plan itself falls outside the permitted subjects and is therefore silenced by operation of the rule.

136. The directives operate as a prior restraint. They do not respond to past speech alone; they forbid future speech before it occurs, on pain of being

"disregarded" and of being "block[ed]" from the school's electronic-mail system altogether. Ex. B. "Prior restraints on speech . . . are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

137. The directives vest unbridled discretion in McKeel personnel. They supply no definition of "inflammatory," "productive and cordial," "duplicative," "reasonable number," or "clear and articulable facts"; identify no decisionmaker; require no explanation; and afford no review. A licensing scheme that places "unbridled discretion in the hands of a government official or agency" is constitutionally intolerable because it creates the risk of content-and-viewpoint-based suppression that cannot be detected after the fact. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). For the same reason the standards are impermissibly vague: they give "no standard[] for those who apply them," *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972), and leave Plaintiff to guess, at the cost of his only channel to his child's school, where the line is.

138. Whatever forum classification applies to a public school's parent-communication channels, a restriction imposed on a single parent because of the content and viewpoint of what he said is invalid. Even in a nonpublic forum, restrictions must be reasonable and viewpoint-neutral. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983); *Minn. Voters All. v. Mansky*, 585

U.S. 1, 11–12 (2018). These restrictions are neither: they are aimed at the content of Plaintiff's allegations, and they supply no objective, workable standard capable of even-handed application. The Eleventh Circuit has invalidated a school board's blanket restriction that burdened citizens' ability to communicate about school affairs, holding that it impinged both free speech and the right to petition for redress of grievances. *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118 (11th Cir. 2021).

139. The restrictions are not narrowly drawn to serve any legitimate interest. McKeel has legitimate interests in orderly operations, in protecting employees from harassment, and in the efficient handling of parent correspondence. But a cap of one email per week to one recipient on four subjects, with no guaranteed answer, imposed on a parent who is simultaneously barred from every campus and from contacting his child's teachers, is grossly disproportionate to any such interest. Neutral, generally applicable anti-harassment, privacy, safety, and records policies remain fully available to McKeel and are not challenged here.

140. McKeel acted under color of state law and pursuant to official policy. Fla. Stat. § 1002.33(1); *Monell*, 436 U.S. at 690–91; *Pembaur*, 475 U.S. at 480–81.

141. As a direct and proximate result, Plaintiff's First Amendment rights have been and continue to be abridged, entitling him to declaratory relief, injunctive relief, nominal damages, and actual damages.

## COUNT IV

### FIRST AMENDMENT — PETITION CLAUSE — 42 U.S.C. § 1983
**Punishing Petitions Addressed to Courts and Government Agencies**
(Against Defendant The Schools of McKeel Academy, Inc.)

142. Plaintiff incorporates paragraphs 9–17, 30–44, 46–59, 84–88, 91–96, and 101–104 as though fully set forth herein. No other paragraph is incorporated into this Count.

143. The First Amendment secures "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. The right protects resort to the courts and to administrative agencies alike. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387–89 (2011); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *DeMartini*, 942 F.3d at 1288.

144. Plaintiff makes clear what this Count does **not** assert. He does not claim a constitutional right to compel McKeel to answer him. He does not claim that the Petition Clause obliges a government actor to listen or to respond. *Cf. Smith v. Ark. State Highway Emps.*, 441 U.S. 463, 465 (1979); *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984). His claim is the distinct and settled one: a government actor may not **punish** a person for petitioning, and may not forbid him to address his grievances to other branches of government.

145. McKeel did both. In the September 15, 2026 letter it listed Plaintiff's federal lawsuit and his complaints to Polk County Public Schools, the Office of the

Attorney General of Florida, and the Florida Department of Education among his "violations," and then imposed the revised restrictions "[a]ccordingly." Ex. B. Labeling a lawsuit a violation and sanctioning the litigant for it is a direct penalty on the act of petitioning.

146. The directives also operate as a standing prohibition on petitioning. Directive 1 provides that Plaintiff is "not permitted to directly contact **or copy** any other individuals" on communications concerning his child, school records, school policies, or grievances. Ex. A (emphasis added). The September 15 revision restates the prohibition and extends the covered subject matter to "any other matter." Ex. B. On its face, and as McKeel has applied it, that rule forbids Plaintiff to copy McKeel personnel when he complains to a school district, an attorney general, or a department of education — which is exactly the conduct McKeel scored as a violation on September 4 and September 7, 2026.

147. A government actor may not condition a parent's continued access to his child's school on his refraining from complaining about that school to other government bodies. The right to petition would mean little if the entity complained of could sanction the complaint. A blanket restriction that burdens a citizen's ability to communicate about the operation of a public school impinges the right to petition for redress of grievances. *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118 (11th Cir. 2021). And the unconstitutional-conditions principle forecloses the

defense that McKeel could have withheld the underlying privilege for some other reason. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

148. The sanction imposed is materially adverse and would deter a person of ordinary firmness. *Bailey*, 843 F.3d at 481; *Bennett*, 423 F.3d at 1251, 1254; *Turner*, 65 F.4th at 580. Plaintiff has in fact been deterred.

149. Causation is stated in Defendant's own document. *Huggins*, 151 F.4th at 1282; *Nieves*, 587 U.S. at 398. The eight-day interval between the September 7, 2026 complaints and the September 15, 2026 revised directive independently supplies temporal proximity. *Akins*, 420 F.3d at 1298–99, 1305.

150. McKeel acted under color of state law and pursuant to official policy. Fla. Stat. § 1002.33(1); *Monell*, 436 U.S. at 690–91; *Pembaur*, 475 U.S. at 480–81; in the alternative, *Matthews*, 294 F.3d at 1297.

151. As a direct and proximate result, Plaintiff's rights under the Petition Clause have been and continue to be abridged, entitling him to declaratory relief, injunctive relief, nominal damages, and actual damages.

## COUNT V

### FOURTEENTH AMENDMENT — PROCEDURAL DUE PROCESS — 42 U.S.C. § 1983

**Indefinite Criminal-Trespass Designation and Indefinite Prohibition on Communicating with the Child's Teachers, Imposed Without Notice, Hearing, Duration, or Review**

(Against Defendant The Schools of McKeel Academy, Inc.)

152. Plaintiff incorporates paragraphs 9–17, 30–44, 46–59, 77–82, 91–96, and 101–104 as though fully set forth herein. No other paragraph is incorporated into this Count.

153. **This Count does not assert a right of access to school property.** *See supra* ¶¶ 9–12. Plaintiff accepts, for purposes of this Count, that he has no free-standing constitutional right to enter a McKeel campus. *Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 462 (11th Cir. 2010). He asserts two different liberty interests, neither of which is a right of entry.

154. **The first liberty interest: reputation plus altered legal status.** McKeel has designated Plaintiff, in writing and to its entire personnel, as a person who is "trespassed" and against whom, if he is found present, "law enforcement will be called immediately and McKeel Academy will seek prosecution for illegal trespass." Ex. A. That designation is both stigmatizing — it publishes to every employee of his child's school that Plaintiff is a person to be reported to police — and status-altering: it converts conduct that is lawful for every other parent into

conduct for which Plaintiff alone may be arrested under Fla. Stat. § 810.097. A defamatory governmental designation coupled with the alteration of a legal right or status implicates a protected liberty interest. *Paul v. Davis*, 424 U.S. 693, 708–12 (1976); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

155. **The second liberty interest: directing his child's education.** The interest of a parent in the care, custody, and control of his child — which includes directing the child's education — is "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925). The Eleventh Circuit has acknowledged that interest even while holding that it does not extend to a right of entry onto school property. *Porter*, 406 F. App'x at 462. This Count occupies exactly the space *Porter* left open.

156. McKeel has not merely excluded Plaintiff from buildings. It has forbidden him to **communicate** with his son's teachers at all — "You are also not permitted to directly contact any of your son's teachers" — restated and preserved in the September 15, 2026 revision. Ex. A; Ex. B. Communication with a child's teachers is not access to real property. It is the substance of directing a child's

education, and it is the one means of participation that remains when a parent is physically barred. Its total and indefinite prohibition is a deprivation of the *Troxel* interest itself, not of a right of entry.

157. McKeel has compounded that deprivation by capping Plaintiff at one communication per week, to one person, on four permitted subjects, with no guaranteed response and everything else "disregarded," on pain of being blocked from McKeel's electronic-mail system entirely. Ex. B. The practical effect is to sever a parent from his child's schooling.

158. **McKeel afforded no process whatsoever.** It gave Plaintiff no notice of the specific conduct said to warrant the designation or the ban; no opportunity to respond before either issued or at any time since; no hearing; no identified decisionmaker; no statement of the evidence relied upon; no stated duration; no review date; and no avenue of appeal. When Plaintiff asked on September 15, 2026 that McKeel identify the court order, custody provision, statute, policy, or other written authority for the restrictions, or else identify the person who decided, he received no substantive answer. Ex. I.

159. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation modified). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and

opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation modified).

160. The *Mathews* factors favor Plaintiff decisively. The private interests — freedom from a published designation exposing him alone to arrest, and participation in his own child's education — are weighty on any measure. The risk of erroneous deprivation under McKeel's procedures is total, because there are no procedures: no standard, no record, no identified decisionmaker, no review. And the burden of providing process is slight. Written notice of the conduct at issue, an opportunity to respond in writing, a stated duration, and periodic review would cost McKeel almost nothing and would create no risk to any student or employee. *Mathews*, 424 U.S. at 335.

161. The indefiniteness is itself the constitutional defect. A restriction with no end date, no review date, and no procedure for rescission is a permanent deprivation imposed without adjudication. A governmental rule that "needlessly, arbitrarily, or capriciously impinge[s] upon" a fundamental liberty interest cannot stand. *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 640 (1974). *Cf. Thornton v. Limestone Cnty. Bd. of Educ.*, No. 5:25-cv-00205-HNJ, 2026 WL 353623 (N.D. Ala. Feb. 9, 2026) (parent stated a cognizable Fourteenth Amendment liberty deprivation arising from interference with the direction of her child's education).

162. **The relief sought is process, not entry.** Plaintiff does not ask this Court to order McKeel to admit him to any campus. He asks that if McKeel is to continue designating him a criminal trespasser and forbidding him to communicate with his son's teachers, it must first give him written notice of the grounds, a meaningful opportunity to respond, a written decision stating the grounds and a definite duration, and a date for review.

163. McKeel acted under color of state law and pursuant to official policy. Fla. Stat. § 1002.33(1); *Monell*, 436 U.S. at 690–91; *Pembaur*, 475 U.S. at 480–81.

164. As a direct and proximate result, Plaintiff has been and continues to be deprived of liberty without due process of law, entitling him to declaratory relief, injunctive relief, nominal damages, and actual damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daniel Benjamin Fleischman respectfully requests that this Court enter judgment in his favor and against Defendant The Schools of McKeel Academy, Inc., and grant the following relief:

**A. Declaratory judgment** that Defendant, acting under color of state law, violated Plaintiff's rights under the First Amendment, as applied to the States through the Fourteenth Amendment, by treating his federal lawsuit and his complaints to Polk County Public Schools, the Office of the Attorney General of Florida, and the Florida Department of Education as violations warranting sanction;

**B. Declaratory judgment** that the August 14, 2026 directive and the September 15, 2026 revised directive are, as applied to Plaintiff, content- and viewpoint-based restrictions on protected speech and impermissible prior restraints, and that they vest unbridled discretion in Defendant's personnel;

**C. Declaratory judgment** that Defendant's indefinite designation of Plaintiff as a criminal trespasser subject to immediate law-enforcement referral, and its indefinite prohibition on his communicating with his son's

teachers, imposed without notice, opportunity to be heard, stated duration, or review, deprive Plaintiff of liberty without due process of law;

**D. Permanent injunction** restraining Defendant, its officers, directors, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from treating Plaintiff's filing of this or any lawsuit, or his submission of complaints to any government agency, as a violation of any communication plan or as a ground for any sanction, restriction, or adverse action;

**E. Permanent injunction** restraining Defendant from enforcing against Plaintiff (i) the prohibition on contacting his son's teachers; (ii) the prohibition on copying any other individual on communications concerning his child, school records, school policies, or grievances; (iii) the condition that his communications be "productive and cordial" and free of "inflammatory" language; and (iv) the one-email-per-week cap and the associated threat to block him from Defendant's electronic-mail system;

**F. Permanent injunction** requiring that, as a condition of continuing to designate Plaintiff a criminal trespasser subject to law-enforcement referral, or of continuing to prohibit him from communicating with his son's teachers, Defendant provide him written notice of the specific conduct relied upon, a meaningful opportunity to respond in writing to a decisionmaker who did

not issue the restriction, a written decision stating the grounds and a definite duration, and review at intervals no greater than one school semester. Plaintiff does **not** request an order directing Defendant to admit him to any campus;

**G. Permanent injunction** requiring Defendant to provide a neutral, written procedure by which Plaintiff may receive the educational information and records to which he is entitled by law, and by which he may respond to communications initiated by his son's teachers;

**H. Nominal damages** of one dollar ($1.00) on each of Counts I, II, III, IV, and V, for the completed violation of Plaintiff's constitutional rights, *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021);

**I. Compensatory damages** in an amount to be determined by the trier of fact for Plaintiff's actual out-of-pocket expenses and lost time caused by the violations alleged;

**J. Costs** of this action as permitted by 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1). Plaintiff does **not** seek an award of attorney's fees, because a pro se litigant may not recover them. *Kay v. Ehrler*, 499 U.S. 432, 435–38 (1991); and

**K. Such other and further relief** as the Court deems just and proper.

Plaintiff expressly does **not** seek: any order concerning custody, time-sharing, or parental responsibility; any order directing or preventing his son's enrollment at or withdrawal from any school; any finding as to what occurred between two students on February 5, 2026; any discipline of any student or employee; any finding that any person committed a crime; any relief against The School Board of Polk County, Florida or Frederick Heid; or the reopening of any matter adjudicated in *Fleischman v. Polk County School Board*, No. 8:25-cv-02479-WFJ-TGW.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

## VERIFICATION UNDER 28 U.S.C. § 1746

I, Daniel Benjamin Fleischman, declare under penalty of perjury under the laws of the United States of America that I am the Plaintiff in this action; that I have read the foregoing First Amended Verified Complaint; that the factual allegations contained in it are true and correct of my own personal knowledge, except those alleged on information and belief, which I believe to be true; and that each exhibit referenced in it is a true and correct copy of the document it purports to be, redacted only as required by Fed. R. Civ. P. 5.2.

Executed on September 17, 2026, in Ambridge, Pennsylvania.

**DANIEL BENJAMIN FLEISCHMAN**

Dated: September 17, 2026.

Respectfully submitted,

**DANIEL BENJAMIN FLEISCHMAN**
Plaintiff, Pro Se
648 Merchant Street, #1026
Ambridge, Pennsylvania 15003
Telephone: 724-462-5730
Email: operationreunification@gmail.com

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with M.D. Fla. Local Rule 1.08: it is on 8½ x 11 inch paper with one-inch margins, in 14-point Times New Roman type, double-spaced except for block quotations, headings, and the signature and certificate blocks, and bears page numbers at the bottom center of each page after the first. I further certify, under Fed. R. Civ. P. 11(b), that this pleading is not

presented for any improper purpose; that the legal contentions are warranted by existing law; and that the factual contentions have evidentiary support.

**DANIEL BENJAMIN FLEISCHMAN**

## CERTIFICATE OF SERVICE

I certify that on September 17, 2026 I submitted the foregoing to the Clerk of Court for filing by United States Postal Service, and that I served a true and correct copy by electronic mail on counsel for Defendant The Schools of McKeel Academy, Inc., at the electronic mail addresses from which counsel transmitted the August 14, 2026 and September 15, 2026 letters described herein:

**Braxton A. Padgett, Esq., B.C.S.**
braxton@arnoldlawfirmllc.com
Katie Sevier
ksevier@arnoldlawfirmllc.com
**THE ARNOLD LAW FIRM**
3840 Crown Point Road, Suite B
Jacksonville, Florida 32257
Telephone: 904-731-3800 | Facsimile: 904-731-3807
Counsel for The Schools of McKeel Academy, Inc.

I am not a registered user of the Court's CM/ECF system and cannot file electronically. Upon docketing, the Court's CM/ECF system will transmit a Notice

of Electronic Filing to all registered users in this action. I further certify that I retained the electronic-mail transmission record and the United States Postal Service mailing receipt for the foregoing.

**DANIEL BENJAMIN FLEISCHMAN**
Plaintiff, Pro Se